Appellant Whittaker Corporation Let me begin with a quick overview of the two provisions of CERCLA at issue here. First, Section 107A. 107A provides for cost recovery. In a 107A action, the plaintiff must show three things. First, that it incurred response costs. Second, that the defendant is a covered person as defined in 107. And third, that there was a release causing the plaintiff to incur those response costs. In contrast, Section 113F1 provides a claim for contribution. In a 113F1 contribution case, the plaintiff may seek contribution. In other words, the plaintiff may seek to recover money that it has paid to someone else in a court judgment. The trial court in the contribution action may then make an equitable allocation. Now, 113F1 also has a provision controlling the timing. That is when the contribution claim can be made. It's pretty flexible. It says the contribution claim can be made either while the underlying 107A claim is pending or it may be made afterwards. So, applying those provisions to the complaint. Whittaker's complaint seeks to recover response costs that Whittaker directly incurred or will incur in the future. That is a classic cost recovery claim under 107A. The complaint is expressly limited to costs that were directly incurred by Whittaker in remediating the site. And the complaint expressly does not seek to recover money that Whittaker paid to the so-called water purveyors in the Castaic Lake case. Let me ask you, could Whittaker have initiated a contribution action against the government, the United States, during that Castaic Lake litigation? And it would have been limited only to the monies paid to the water purveyors in Castaic Lake. And why didn't they do that? It had the option of either bringing that contribution action during the pendency of the 107A or afterwards. As it ends up, there was insurance coverage involved, so the insurer with its subrogated rights did bring the 113F1 action. But you're saying also, I think, that they couldn't have or they could have also brought an action at that time against the government for costs beyond the Castaic Lake liability or damages, the percolate and the replacing of the water. There had been some direct recovery costs already incurred by Whittaker at that time, whether it could have been brought before then, during then, after then. There's an outrageously long statute of limitations in a 107A claim, so it still has six years to go before bringing its 107A cost recovery action. And then why did it wait so long? I'm just curious. I mean, why did they wait so long to bring the cost recovery action for the other costs, not the Castaic Lake costs, against the United States? I mean, if anything, you could say it's early because the six-year statute of limitations starts with the initiation of the final remediation. And I think it's just a matter of choice. How much do you want to incur unreimbursed out-of-pocket in terms of recovery costs before you finally pull the trigger and go out and bring your 107A action trying to get recovery from the other parties? If I could jump in, I have a question. This will help me understand because I find this a very difficult case. Let's imagine that there is a plot of land that we'll call the Whittaker plot, and it's 100 acres. And an action is brought by a water authority saying that the Whittaker 100 acres has contaminated off-site water. And they reach a settlement as to acre one. They say acre one, here's how we're going to remediate acre one. But they don't reach a settlement as to acres two through 100. Whittaker then wants to seek contribution. So your position is it could seek contribution only as to that or cost for that one acre because that would be the terms of the settlement. It's actually defined by who paid what to whom. So if Whittaker pays as part of, in this case, the Castaic Lake case, if Whittaker pays as a 107A defendant money to the 107A plaintiff, Whittaker then has a contribution action that is limited to the amount of money paid to the 107A plaintiff in that original action. That's not answering the question. So I guess, again, the question is that – I'll take a step back. It's my understanding under CERCLA that one of the goals is to get everyone to the table as quickly as possible to try to have a comprehensive plan to remediate. If we take your position, like I said, there's a close case in my view. My concern is that you would further piecemeal how these things are resolved. Tell me why my concern is not true here. What you've described is one side of CERCLA where you have an EPA-initiated action, not under 107 usually, but usually under 106, where EPA does indeed coordinate a remediation and goes out and sues under 106, not everybody always, but the major players, and it tells the major deep pocket defendants, go remediate, and you sort out through contribution actions how you split it up among yourself. This is a very different type of CERCLA claim. This is just a – it started in Castaic Lake with the water purveyors suing Whittaker, and all the water purveyors were seeking was their cost recovery from Whittaker. Whittaker entered into this Castaic Lake settlement, and now the government is saying, well, wait a minute, that should have been contribution, but that's not what Whittaker is seeking in the current lawsuit. Whittaker in the current lawsuit is seeking its out-of-pocket costs, not the money that it paid to – Or its insurance company. Could both cases – could Whittaker have filed a contribution claim against the government for part or all of what it paid Castaic and also filed a separate suit for the rest of the damages that it had previously incurred under the ordinary recovery suit? That's what it's doing now. It's filing it as a separate suit. It's filing it as a separate suit. So not asking for contribution from the government. Could they have pursued both suits simultaneously for contribution as to what they're paying to the water users and the suit for the government as to what they previously paid unrelated to the contribution suit? Could they have both suits together? I think that's possible, sure. Absolutely. It could be done. And a 113. Yeah, but the 107A cost recovery claim that's being brought now could have been brought – yeah, you're correct. It could have been brought at any time. It could be brought next year. It could be brought the year after. There's still plenty of time left to run on the statute of limitations. How do you separate what you're doing when you remediate? Here, is it these water users or Castaic? Are they seeking only the removal of one particular poison? With respect to their wells, which are geographically at a different location. So here it actually is a fairly easy case to try and unscramble the eggs, so to speak. What do you have to do to eliminate the poison that poisoned their wells? Do you have to remediate only a separate geographical area? My understanding is that the water purveyors' costs were incurred solely at the site of their wells. They were not at the main Whitaker site, so to speak. So here you do have that additional element. Does that mean you cure it at the site of the users, not at Whitaker's? Proposals to drill additional wells, all sorts of things. So Whitaker paid for that, and that was the subject of the Castaic Lake settlement. And that is unrelated to the remediation they previously did or may do in the future? That's right. Whitaker, in the 107A action before the court now, is seeking to cost recovery for its own remediation. Nothing to do with what the water purveyors did. What's the policy behind your view? There is a strong policy under CERCLA to encourage private parties to voluntarily remediate. So the question is, how do you do that? How do you get people to go out on their own initiative and engage in remediation activities? And the answer is 107A is the key because the standard is so low in 107A that a private party has a strong incentive to voluntarily engage in remediation because it can then turn around and bring a 107A cost recovery action. And all it has to show is that it incurred the cost, that the defendant is a covered person, and that there was a release that caused the response cost to be incurred. So if you knock out 107A and tell everybody you have to bring a 113F1 action, a contribution action, then you've eliminated the centerpiece of the effort to encourage voluntary efforts. You've knocked out 107A. And it would be a rare party then that would voluntarily remediate without the incentive of having a 107A action available. But how does that play? Because I guess the other policy and the one the government is really focusing on, and already mentioned here, that you're supposed to bring everybody to the table earlier than possible. Are you saying that this Castiac Lake litigation only triggered bringing everybody to the table for those discrete costs of the perchlorate damage and the renewal of the well water? Correct. If you look at 107, there is nothing that says the policy of 107 is to bring everyone to the table. The policy of 107 is to allow cost recovery. And as explained in W.R. Grace v. Soto's case cited in her brief, the underlying policy behind that is to encourage voluntary initiation of remediation efforts. I'd like to reserve my time. Well, I was going to say we'll give you the full five minutes. Thank you, Your Honor. Thank you. All right. Thank you. If you need a couple of extra minutes, we'll give it to you, too. Thank you, Your Honor. Nicholas Demasi on behalf of the United States is appellee and may please report. I came here prepared to focus on two main points, the first being the mutual exclusivity of remedies under Section 113 and 107. I'll go ahead and move to my second point since that's where most of the Court's questions have been this morning, but it is worth remembering that six of this Court's sister circuits have post-Atlantic research taken a look at the question of the mutual exclusivity of Section 113 and 107, and all six have held that where a PRP falls under the procedural circumstances governed by Section 113, it must use that remedy and cannot elect to sue under 107. My second point here is that Whitaker does, in fact, meet the prerequisite for a contribution claim under Section 113 because it has been sued under Section 107A for the cost of cleaning up the contamination released by its facility. There is no reason that Whitaker could not have sought to assert a contribution claim against the United States. But does it have to? Yes, Your Honor. What Section 113)(f)(1 says is that any person may seek contribution from any other person who is liable or potentially liable under Section 108 during or following any action under Section 107. But that doesn't answer whether it has to. I mean, is it required to seek a contribution action? Well, once you have a contribution action. And they say, I don't want to waive my rights that I would normally have to recover a portion of $100. The answer to that question is yes. Once your right to contribution under Section 113)(f)(1 has been triggered by a suit under 107 for some subset of costs to clean up a given contaminated site, what Congress envisioned happening is that the PRP would then be able to assert a contribution claim against any other PRP at the site for any costs that that PRP has incurred. But doesn't Atlantic Research affect this interpretation? Because it seems like, and I think you're arguing that Whitaker could bring a contribution action once it was sued in the Castaic Lake case, right? Or should have, I guess, is what you're saying. But under Atlantic Research, it seems like Whitaker's right to contribution was contingent, I'm looking at Atlantic Research, contingent upon the liability of the Castaic Lake case. I mean, that's the language that they use. And so, I mean, they don't say Castaic Lake, but they use the word contingent upon the liability of the, and then contribution action. Contingent upon an inequitable distribution of liability, that's the phrase that was used in the Atlantic Research case. I think it's important to take a step back and look at what the complaint in Castaic Lake actually asserted here. And that was the Castaic Lake complaint asserted that Whitaker was responsible for the contamination on, above, under, and near the site, including without limitation per chlorate. So there was a very broad allegation of liability that Whitaker was liable for cleaning up the contamination at the site. That 107 complaint. But do we look at the alleged liability or the actual liability? I think you have to look at the alleged liability, because what the text of 113F1 says is that you can bring a contribution claim against any other party who is liable or potentially liable during or following any suit under Section 107. So when Whitaker's liability as a PRP at this site was placed at issue by the Castaic Water complaint, it immediately gained access to a contribution claim against any other PRP at that site. This is what I don't understand. I ask you the question, suppose Castaic had $100 in damages as a result of that. Meanwhile, Whitaker spent $1 million in restoring and remediating the property. Sure. Can you get more in the contribution claim than what you paid out? I think this is a very important point, Your Honor. If a PRP is sued in your hypothetical for $100 worth of response costs that someone else has incurred, and that PRP has incurred, let's just say, $5 million worth of costs for cleaning up other, for performing other response actions at the site, what the Atlantic Research case said and what this court said in Potros, subsequent to Atlantic Research, is that the PRP who's been sued under 107 should be able to file an equitable allocation of all liability at the site so that it can obtain a fair resolution of all those costs. And so my point would be, and this comes up all the time, if a PRP is sued for a certain subset of costs at the site, it should be able to file a contribution counterclaim for any other costs that it has incurred in order to ensure that overall equitable allocation. It seems like your broad view of this common liability established by the Kastiak-Lake case is inconsistent with the Seventh Circuit's decision in Bernstein, and then I think it's the Third Circuit's decision in Aguirre, which similar circumstances, and the parties were allowed to bring cost recovery actions for costs separate from those that were covered by the prior settlements. Why shouldn't we follow the Seventh and the Third Circuit here? It seems, I mean, looking at this case, and I know the policy, and that's why it makes this a close case for me, that, you know, we're supposed to bring the parties to the table as early as possible, but when you have a separate discrete action, you know, and someone like Whitaker came in, settled it, and meanwhile, spending a lot of money, it looks like, on the remediation, something also that I think CERCLA wants to encourage, this whole voluntariness on the, especially on a munitions plant like this one where the property seems like it could probably use a lot of remediation. Why don't we want to view this the way the Seventh and the Third Circuit did? Well, Your Honor, respectfully, I disagree that those cases are inconsistent with the position we're putting forward here. To help me understand why they're not. The Bernstein case that you're referring to is actually a case under Section 113F3B, whereas here we're under Section 113F1. 113F3B has to do with settlements with the United States or a state for a particular set of liability at the site. 113F1 has to do with PRPs who have been sued under Section 107, and so it's not necessarily the case that those two, the scope of a contribution claim under those two different provisions would be the same. I would refer, Your Honor, to the subsequent decision of the Seventh Circuit in the NCR v. Whiting case. That is the more factually opposite Seventh Circuit case. And what happened there was that a PRP had incurred costs under what's called a unilateral administrative order. It incurred a bunch of costs and then subsequently it was sued under Section 107A. And the argument that was presented is very similar to the argument that Whitaker is presenting here, and that was that because I incurred certain costs before I was sued under Section 107A, those costs can't be part of a contribution claim under Section 113F1. The Seventh Circuit specifically rejected that argument, said slicing and dicing up the costs in this manner that you're referring to simply isn't supported by the text, structure, or purpose of CERCLA because it has a comprehensive remedial purpose. And so what matters here is that one of the triggers in Section 113F1 has been met. You have been sued under Section 107A. You, therefore, gain access to a contribution claim. And the policy that's fundamentally underwriting all of this conversation is Congress's policy, the idea being that all related contribution claims will be brought or can at least be brought in a single suit early on in the case in order to obtain an early allocation of all liability at the site and thereby channel PRP's efforts into cleanup and not piecemeal, successive litigation over individual pots of costs over multiple years. And that's precisely what's going to happen here if you rule in Whitaker's favor in this case. I understand that, but it seems like there is something to the other side's argument that your position, and I understand the CERCLA's position to bring people to the table as soon as possible, but it seems like that would be for the overriding majority cost of the remediation. And here, in light of what you said the policy is, it would allow plaintiffs in minor cases to force all potentially responsible parties, you know, at a site to bring their claims within a very accelerated time frame. And I'm just trying to find the balance here. And does this, what Whitaker's arguing, not offer that balance? Well, Your Honor, respectfully, I think that the balance that matters here is the balance that Congress struck in the statute.  I understand. Absolutely, Congress struck. But Atlantic Research seems to, you know, how you read it seems to lend support to what Whitaker is arguing. I don't believe that's correct, and the reason why is because Atlantic Research was about a case about a PRP who had neither been sued under Section 107 nor settled its liability with the United States, and therefore did not have access to a contribution claim under Section 113F. All of the subsequent circuit authority interpreting Atlantic Research has noted that, and basically their entire argument is premised on a footnote, footnote 6 of Atlantic Research, which is essentially dictum. Because the question in Atlantic Research was, can a PRP, the PRP in Atlantic Research not, that did not have access to 113F claim, can such a PRP qualify as, quote, unquote, any other person who can sue under Section 107? That is the narrow question that Atlantic Research resolved, and it left open this question of the relationship between Section 107 and 113 when the PRP is in the circumstances governed. That's the question that six of this Court's sister circuits have subsequently resolved. I know there's focus on a footnote, but it seems like even in the body of the language of Atlantic Research, when it's referring to the definition or liability, it talks about a right of contribution distinct from cost recovery. So I don't think they say voluntarily at that point in Atlantic Research, but it seems to support this footnote, what they wrote there. Well, the idea that Section 113 and 107 are distinct remedies available to PRPs in different procedural circumstances is precisely what, for example, the Sixth and Seventh Circuits in the Hobart, Bernstein, and Whiting cases have recently focused on, rather than the, quote, unquote, voluntariness, which is a rather elusive concept. You know, I think, again, what I would like to bring this back around to is, if you look at Castaic Water's complaint, it alleged Whitaker's liability for all, for sight, and there was nothing to stop Whitaker at that point from asserting a contribution claim against the United States for any response costs that it had incurred. And instead of doing so, it waited 13 years to attempt to assert a Section 107 claim against the United States here. And this issue of delay, this issue of subsequent piecemeal litigation that is going to come back to haunt the courts over and over, rather than having PRPs focus their efforts on cleanup, getting an early allocation of all liability at the site, that is the policy that Congress intended to further in enacting Section 113-F. And if Your Honors were to adopt the interpretation that Whitaker is asserting here, it would defeat that. Whitaker had plenty of time in order to bring this claim, and it decided not to do so. It's also simply not accurate to portray Whitaker here as some willing participant in a cleanup operation, where Whitaker defaulted on its obligations to the state to clean up this site, and it's only now, 13 years later, that they're attempting to bring in the United States. What should have happened here, which is precisely what Congress said that we cite in our brief, is Whitaker should have brought a contribution claim against any other PRPs at the site as soon as its liability as a PRP was asserted in a litigation. Does it matter that it was its insurance company versus the Whitaker that paid those costs? In a separate? In Kastiek Lake, it was their insurance company, the Whitaker's insurance company, I believe I'm right on that, that paid the cost and not Whitaker. Does that matter? No, because Whitaker's liability was what was placed at issue, not the insurance company's liability. I'm just curious. There's no distinction there? I don't believe so. No. Because you were just saying that they're paying out of their own costs when you were making your argument, and so I understand why you're making that argument, but it was their insurance company that actually paid that liability. Sure. I'm not talking about the specific dollar amounts here. What I'm talking about is that when Whitaker's liability as a PRP at the site had been asserted, that it had been placed at issue, what Congress thought would happen is that Whitaker would gain a contribution claim against any other PRPs at the site, there would be an early equitable allocation of all liability at the site, and that that mode of proceeding would encourage and enhance early, timely cleanups. And if you were to instead piecemeal out each bucket of costs that's being sought, you would end up with multiple suits, more money going into litigation than cleaning up sites. But I guess, and I understand that line of argument, but if you could just briefly respond, does it, though, not discourage, if we go along with your view, companies from voluntarily taking up this remediation effort? I don't believe so, because, actually, it's quite the opposite. Section 113, the contribution provision, which was added later than 107, was actually intended to be a kind of carrot to encourage PRPs to have the confidence to know that if you go ahead and you take on these cleanup obligations, you will be But along with that carrot that Congress enacted was a stick. And the stick is the limitations period. The limitations period, while providing rights to PRPs to seek contribution and thereby have confidence that they'll regain their costs, the limitations period creates a stick to ensure that they do so in a timely manner, rather than waiting 13 years to bring this type of action at a later date. If nobody sued them, but they did voluntarily remediate and spend tens of millions of dollars, there'd be no problem with their waiting as long as they waited. They could do that and bring a suit. But if somebody sues them for something connected with this, then they lose that right to bring that suit. They have to bring it because somebody has sued them for something connected with that site. Right. And the idea is that Congress has. This was Congress's judgment of how it's supposed to work, is that once they've been sued and litigation has begun and liability at the site has been placed at issue in a suit under 107, Congress wanted that PRP who had been sued to be able to assert contribution claims against anyone else at the site and bring this early equitable allocation of liability to close at an early point in the site cleanup. So once the litigation has begun, let's get it over with and get to the cleanup. It's not really a contribution claim. It's what would be a PRA or whatever the other claim is. It would have been that kind of a claim until they paid $100 to some other company. And once they pay that, they can sue not only for the part of that money they paid, contribute to that verdict or that settlement, but they must then convert what would have been a direct suit into a contribution suit against the government or the other parties have nothing to do with that. They wouldn't have been able to sue the other parties for contribution until this unrelated or I don't want to use it here. Well, so it's the idea, there is a slight difference between classic contribution and what Congress enacted in Section 113F, and that is in Section 113F, Congress authorized a contribution claim during or following a suit under 107. So before there has been an adjudication of liability, before you know the precise bounds of liability for any particular subset of costs, Congress thought it appropriate to allow a PRP to file that contribution claim before the liability had been set. That is a slight difference than classic contribution in tort law. But the reason that Congress authorized that is precisely in order to ensure that all contribution claims, all related contribution claims at a site could be brought together in a single suit to ensure an efficient, comprehensive allocation of liability at the site early in the cleanup process and thereby channel everyone's efforts towards cleanup rather than more successive rounds of litigation over each subset of costs. Your Honor, I see I'm over my time, and so if I've answered your question sufficiently, I'd simply urge Your Honors to affirm the judgment here of the district court. Thank you. Let me begin where the government just left off. Under the common law, there is recognized a contingent contribution claim. That's in Restatement Third of Torts, Section 23 cited in our briefs, but it's in Comment B. So under both Section 113F1 and the common law, you have a contingent claim for contribution. And the scope of that contingent claim is defined by the underlying lawsuit. Let's call it Lawsuit Number 1. And here is what the water purveyors said in the Castaic Lake case, which we'll call Lawsuit Number 1. Their first claim for relief was for costs incurred by plaintiffs. They weren't trying to litigate liability for the entire site, all parties, all comers. It was a simple suit by the water purveyors to recover the costs that they themselves had incurred. And that's right in line with what the Supreme Court said in Atlantic Research. Let me quote from page 138 of the case where the court said, 107A permits a PRP to recover only the costs it has incurred in cleaning up the site. That was what was at issue, the water purveyors' costs incurred by the water purveyors. So finally, I think the government has missed the fact that in Atlantic Research the Supreme Court addressed exactly the controlling issue here of what did Congress mean by contribution. And on 138 to 139, even if you ignore footnote 6, it answered that question and made clear that 113F1 allows a party to seek recovery of money that it has paid to someone else. Over two pages of text, that's the one thing that's clear, even though the contribution is under 113F1 has the same meaning as under common law. It's to recover a share of money that you paid to someone else. I just wanted to ask you, so do you ascribe to the Seventh Circuit, I think, as Bernstein and then the Third Circuit a gear? Are they similar to this action here? They're similar to the extent that the Seventh Circuit and Bernstein didn't adopt the government's tripwire theory, that once you hit the tripwire you have to bring all your claims no matter what the subject matter. Bernstein adopts an approach of looking at each claim individually. And I think that's what has to be done here. You have to look at what was alleged in our complaint in this case. If, in fact, it was for out-of-pocket directly incurred costs, then it's a 107A action. 113F1 just has no bearing because this isn't contribution that we're seeking here. Mr. Damasio, to distinguish both the Bernstein and the gear case, I wanted to know if you had a response to his. Well, Bernstein is, in fact, a 113F3B case. So to that extent it does arise in a different statutory setting. So it's probably analogous. The only true 107A case, at least at the appellate level, is Atlantic Research itself. And that's why I think Atlantic Research controls where the Supreme Court has defined for this court and all other lower courts what contribution means. Thank you, Your Honors. Thank you, counsel. Thank you all very much. If I could just add, thank you. This is a very difficult case and close case. And both lawyers really did an outstanding job in arguing today. Mr. Damasio was Judge Silverman's former clerk. And I know he's very proud of him, would be very proud of him today. So I just wanted to acknowledge that. Thank you very much. It was an outstanding argument. And the court will stand in recess for today. All rise.
judges: Reinhardt, Murguia, Owens